UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BENTLEY UNIVERSITY,<br><br>            Plaintiff,<br><br>  v.<br><br>BENTLEY UNIVERSITY PUBLIC SAFETY ASSOCIATION,<br><br>            Defendant. | Case No. 1:19-cv-11262 |

## COMPLAINT

1.     Plaintiff Bentley University ("the University") brings this action against Defendant Bentley University Public Safety Association ("the Association"), pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 2201, and Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, for a declaratory judgment that grievances of "sergeants" employed by the University are not covered by the arbitration agreement found in the parties' collective bargaining agreement.

2.     The University is a private non-profit college located in Waltham, Massachusetts and has a police department on its campus comprised of individuals employed by the University. The University is an employer within the meaning of 29 U.S.C. §152(2) and engaged in an industry affecting commerce.

3.     The Association has represented the "police officers, dispatchers, and security officers" employed by the University since 2013, after a unit consisting of those employees was certified as appropriate for collective bargaining by the National Labor Relations Board ("the NLRB") in NLRB Case No. 01-RC-104768. The Association is a labor organization within the meaning of 29 U.S.C. § 152(5) and, in this District, represents employees in an industry affecting commerce. The Association therefore may be sued in this District under 29 U.S.C. § 185(c).

4. The University and the Association are parties to a collective bargaining agreement that became effective July 1, 2017 and remains effective through June 30, 2021 ("the CBA"). Exhibit A is a true and accurate copy of the predecessor contract and the parties agreement amending the predecessor contract, which together set forth the terms of the CBA. The CBA is an enforceable contract under 29 U.S.C. § 185(a).

5. During the term of the CBA, on January 28, 2019, the Association filed a petition in NLRB Case No. 01-RC-234790 with a regional office of the NLRB seeking to represent the individuals "holding the rank of sergeant" who are employed by the University ("the Sergeants"). On February 21, 2019, the Acting Regional Director ordered an election among the Sergeants to vote on whether they wished to be included in the unit of University employees that was already represented by the Association. On March 15, 2019, after the Sergeants voted in favor of being included in that unit, the Acting Regional Director certified the Association as the representative of a unit comprised of the "police officers, detectives, dispatchers, security officers, and sergeants" employed by the University.

6. The University has not recognized the Association as the representative of the Sergeants and is preserving its objection that the Sergeants are not properly included in any bargaining unit because they are supervisors within the meaning of Section 2(11) of the National Labor Relations Act, 29 U.S.C. § 152(11), and therefore are not employees within the meaning of Section 2(3) of the National Labor Relations Act, 29 U.S.C. § 152(3). The University timely raised that objection to the NLRB regional office in writing on February 5, 2019 and to the NLRB on March 24, 2019, in a request to review the Acting Regional Director's decision to hold the election. That request for review is pending before the NLRB at this time.

7. The University can seek judicial review of orders in Case No. 01-RC-234790 only by continuing to refuse to recognize and bargain with the Association. Such judicial review may be sought only after the NLRB issues a final order in a separate case that the University committed an unfair labor practice by refusing to recognize and bargain with the Association as the representative of the Sergeants.

8. The CBA does not cover the Sergeants. By its terms, the CBA covers only the police officers, dispatchers, and security officers employed by the University ("the 2013 Unit Employees").  Article 2 of the CBA defines "Employees" as used in the CBA to mean the 2013 Unit Employees and explains that those individuals are the only individuals "covered" by the CBA: "The University recognizes the Association as the exclusive representative for the purpose of collective bargaining for those Employees in the unit certified by the National Labor Relations Board in Case No. 01-RC-104768.  Employees covered by this Agreement are only those included in the above defined unit, and the term 'Employee,' whenever used in this Agreement, will be so interpreted."

9. The University has not agreed to arbitrate any grievances of the Sergeants. The CBA includes an agreement to arbitrate that applies by its terms only to grievances of contractual "Employees" and thus only to the grievances of 2013 Unit Employees. Before setting forth how "[a]ll grievances shall be handled," Article 5 states in this regard that:  "This Agreement sets forth the basic terms and conditions of employment, and is intended to continue the present and good relations among the University; its Employees, and their Association. In the event of any grievance between the Employees and the University, the representatives of both agree to make prompt and earnest efforts to settle such matters."

10. Further, the Association agreed in Article 5 of the CBA that Sergeants could resolve, on behalf of the University, the grievances subject to the parties' arbitration agreement. Article 5 of the CBA provides for the filing of a "written grievances" if "the matter is not settled as a result of [] the discussion" by an "Association representative and Employee with the immediate supervisor of the Employee." As the Acting Regional Director noted in ordering the election among the Sergeants, it is "undisputed" that the Sergeants are the "immediate supervisors" of the 2013 Unit Employees within the meaning of that contractual language.

11. Since prior to January 1, 2019, the University has employed Floyd Johns ("Johns") as a patrol sergeant and thus not as a 2013 Unit Employee.

12. On March 20, 2019, the University suspended Johns for five days without first bargaining with the Association over that suspension. The Association attempted to pursue a grievance challenging the suspension of Johns under the CBA, and the University informed the Association that it was not and would not recognize such a grievance as a valid grievance under the CBA.

13. The Association then filed a demand for arbitration over the suspension of Johns with the American Arbitration Association ("the AAA"), claiming that the suspension was subject to the agreement to arbitrate found in Article 5 of the CBA. On June 3, 2019, the University informed the Association that it would file this action and demanded that the Association withdraw its effort to arbitrate the suspension of Johns pursuant.

14. Over the objections of the University, the AAA intends to appoint an arbitrator to hear the Association grievance over the suspension of Johns pursuant to the arbitration agreement in Article 5 of the CBA. The Association has maintained its demand to arbitrate the suspension of Johns pursuant to Article 5 of the CBA

15. Article 5 of the CBA is not susceptible of an interpretation that it includes an agreement to arbitrate the grievance of Johns over his suspension, or an agreement to arbitrate any grievance of any Sergeant. Accordingly, there is grounds for a declaratory judgment that grievances of Sergeants, including the grievance of Johns over his suspension, are not arbitrable grievances under Article 5 of the CBA.

16. The Union's demand for arbitration over the suspension of Johns has the purpose and effect of denying or evading the Union's agreement to the grievance-arbitration process found in Article 5 of the CBA. Not only has the University not agreed to arbitrate that dispute, the Union demands arbitration pursuant to language in which it recognized the Sergeants as having the authority to resolve grievances on behalf of the University. Accordingly, staying the processing of the Union's demand for arbitration would be in aid of the parties contractual grievance-arbitration process and essential to prevent irreparable harm to the University by the Union's breach of its obligations arising under the contractual grievance-arbitration process.

WHEREFORE, Plaintiff prays for the following relief against Defendant:

1. A declaratory judgment that the Union's grievance over the suspension of Johns is not an arbitrable grievance under the parties agreement to arbitrate in the CBA;

2. A declaratory judgment that grievances of Sergeants are not arbitrable grievances under the parties' agreement to arbitrate in the CBA

3. An order staying the further processing of the Union's demand for arbitration over the suspension of Johns pursuant to the parties' agreement to arbitrate in the CBA;

4. An order awarding Plaintiff its attorneys' fees and costs incurred in pursuing this action; and

5. Any further relief as the Court deems just and proper.

                                                Respectfully submitted,

                                                BENTLEY UNIVERSITY

                                                By its attorneys,

                                                <u>/s/  Arthur G. Telegen</u>
                                                Arthur G. Telegen
                                                Skelly Harper
                                                Seyfarth Shaw LLP
                                                Two Seaport Lane, Suite 300
                                                Boston, MA  02210
                                                Telephone: (617) 946-4800
                                                atelegen@seyfarth.com
                                                nharper@seyafarth.com

**Dated:**     **June 6, 2019**